JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GREENE STREET FUNDING II

**DEFENDANTS**

ALL EN 2GETHER, LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___Philadelphia___
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Friedman Vartolo, LLP
1628 John F Kennedy Blvd., Suite 301, Philadelphia, PA 19103
(212) 471-5100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **SOCIAL SECURITY** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 862 Black Lung (923) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 863 DIWC/DIWW (405(g)) | |
| | | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI | |
| | | ☐ 555 Prison Condition | ☐ 865 RSI (405(g)) | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS** | |
| | | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a),

Brief description of cause:
Foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE
3/24/2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jacqueline F. McNally

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:_Mortgage recorded on 5/9/2023_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                        Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?        Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?             Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☒ 8. All Other Diversity Cases: *(Please specify)*_____
_Mortgage Foreclosure

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

Jacqueline McNally, Esq. (201332)
Renee Cohen, Esq. (306667)
Timothy A. Cirino, Esq. (326340)
Robert Flacco, Esq. (325024)
Nicole Francese, Esq. (332253)
Perry Russell, Esq. (334517)
Danielle Johnson, Esq. (334703)
Yvonne Ganley, Esq. (337459)
Andrew Kravitz, Esq. (80142)
**FRIEDMAN VARTOLO LLP**
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case No.: 255627-1

IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

----------------------------------------------------------------x

GREENE STREET FUNDING II,                     NO.:

Plaintiff

v.

ALL EN 2GETHER, LLC,

Defendant

----------------------------------------------------------------x

## <u>COMPLAINT – CIVIL ACTION</u>
## <u>NOTICE TO DEFEND</u>
## <u>NOTICE</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone (215) 238-1701

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone (215) 238-1701

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------x

GREENE STREET FUNDING II,

                       Plaintiff   NO.:

    v.

                                          <u>CIVIL ACTION</u>

ALL EN 2GETHER, LLC,

                 Defendant   **IN MORTGAGE FORECLOSURE**

------------------------------------------------------------------x

## COMPLAINT IN MORTGAGE FORECLOSURE

      Plaintiff, by and through its undersigned counsel, hereby complains against Defendant as follows:

### PARTIES

      1.     Plaintiff is a duly organized corporation having its principal office at 1011 Centre Road, Suite 203, EX-DE-WD2D, Wilmington, DE 19805.

      2.     Defendant is registered to conduct business within the Commonwealth of Pennsylvania, maintains a business situs at 2901 Edgley Street, Philadelphia, PA 19121. This Defendant is a mortgagor and real owner of the Mortgaged Premises hereinafter described.

JURISDICTION AND VENUE

3.      This Court has jurisdiction over this against action pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

4.      Venue is proper in this judicial district pursuant to U.S.C. § 1391(a), as the cause of action arose here and the property that is the subject of this action is situated here.

**BACKGROUND**

5.      On or about May 3, 2023, in consideration of a loan in the principal amount of $592,200.00, Defendant executed and delivered to Logan Finance Corporation a note (the "Note"). A true and correct copy of the Note is attached hereto, marked as Exhibit "A" and made a part hereof.

6.      Plaintiff is the owner and holder of the Note and Mortgage and Plaintiff has designated RF Mortgage Services Corporation, as Servicer for the Plaintiff, pursuant to a Limited Power of Attorney.

7.      The Plaintiff, directly or through an agent, has possession of the Note, which is either made payable to the Plaintiff or has been duly indorsed. Therefore, the Plaintiff has the right to enforce the Note.

8.      To secure its obligation under the Note, Defendant executed and delivered to (`MERS`) Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Logan Finance Corporation dated March 3, 2023, and recorded on May 9, 2023, in the Office of the Department of Records of Philadelphia County (hereinafter the "Official Records"), as Instrument Number 54177770. A true and correct copy of the Mortgage is attached hereto, marked as Exhibit "B" and made a part hereof.

9.      The Plaintiff is the proper party by way of an assignment of mortgage recorded in the Official Records on December 22, 2025, as Instrument No. 54503222. A true and correct copy of the Corrective Assignment of Mortgage is attached hereto, marked as Exhibit "C" and made a part hereof.

10.     The Mortgage secures the following real property (the "Mortgage Premises"): 2742 Germantown Avenue, Philadelphia, PA 19133. A legal description of the Mortgage Premises is attached hereto as Exhibit "D" and made a part hereof.

11.     Defendant is the record and real owner of the Mortgaged Premises.

12.     The Note and Mortgage are in default because the monthly payments due on April 3, 2025, and thereafter have not been paid. As a result, the principal balance and all interest due

thereon have become due and payable with late charges, escrow deficit, and all costs of collection including title search fees and reasonable attorney's fees.

13.    As of February 28, 2026, the following amounts are due on the Mortgage and Note:

**AMOUNT DUE SCHEDULE**

| | |
|---|---|
| Unpaid Principal Balance | $584,696.96 |
| Interest from March 3, 2025 to February 28, 2026<br><br>Interest rate = 0.00000% per year | $54,510.81 |
| Service Transfer Corporate Advances | $475.69 |
| Legal Fees | $2,013.00 |
| Title Fee | $150.00 |
| Service Transfer Late Fee | $492.56 |
| Unpaid Late and/or NSF Fees | $1,477.68 |
| Lien Release Fee | $250.00 |
| Wire Fee | $10.00 |
| Reserve Balances | ($11,476.93) |

| | |
|---|---|
| TOTAL DUE | $632.599.77 |

The current interest rate is 9.375%. Per diem interest in the amount of $152.26 will accrue on the principal unless there is an interest rate change as set forth in the Note. The per diem interest will then accrue on the principal until the next interest rate change date and accrue thereafter in accordance with the variable rate as set forth in the Note.

14.    Note of Intention to Foreclosure pursuant to Act 6 of 1974, Notice of Homeowner's Emergency Mortgage Assistance Program pursuant to Act 91 of 1983, and/or Notice of Default as required by the terms of the Mortgage as applicable have been sent to the Defendants. Copies of the Notices, redacted to remove confidential account information, are attached hereto, marked as Exhibit "E" and made a part hereof.

### CLAIM FOR RELIEF

### COUNT I

### MORTGAGE FORECLOSURE

15.    Plaintiff incorporates by reference the allegations of paragraph 1 through 14 as though fully set forth at length herein.

16. By virtue of the default of the Defendant under the subject Mortgage and Note obligation, Plaintiff is entitled to the entry of an *in rem* judgment against Defendant in foreclosure of the Mortgage for the total amounts due and owing as set forth herein, $632,599.77.

**WHEREFORE**, the Plaintiff requests entry of an *in rem* judgment against the Defendant in the sum of $632,599.77, together with interest, cost (including additional escrow advances), and additional attorney's fees and costs, and for foreclosure sale of the Mortgage Premises.

<u>**COUNT II**</u>

**(ASSUMPSIT)**

17. Plaintiff incorporates by reference the allegations of paragraph 1 through 16 as though fully set forth at length herein.

18. By virtue of the default of the Defendant under the subject Mortgage and Note obligation, the Plaintiff is entitled to the entry of an *in personam* money judgment against Defendant for the total amounts due and owing set forth herein, $632,599.77.

**WHEREFORE**, the Plaintiff requests entry of an *in rem* judgment against the Defendant in the sum of $632,599.77, together with interest, cost (including additional escrow advances), and additional attorney's fees and costs, and for foreclosure sale of the Mortgage Premises.

Date: 3/6/2026

**FRIEDMAN VARTOLO LLP**
A Limited Liability Partnership formed in the State of New York
Attorneys for Plaintiff

/s/ Jacqueline F. McNally

X☐ Jacqueline F. McNally, Esq. (201332)
☐ Timothy A. Cirino, Esq. (326340)
☐ Robert Flacco, Esq. (325024)
☐ Nicole Francese, Esq. (332253)
☐ Perry Russell, Esq. (334517)
☐ Danielle Johnson, Esq. (334703)
☐ Yvonne Ganley, Esq. (337459)
☐ Andrew Kravitz, Esq. (80142)

# Exhibit A



# NOTE

March 3, 2023
[Date]

PHILADELPHIA,
[City]

Pennsylvania
[State]

2742 Germantown Ave, Philadelphia, PA 19133
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$592,200.00**    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    **Logan Finance Corporation, a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **9.375 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st**   day of each month beginning on  **May 1, 2023.**       I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **April 1, 2053,**        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at  **PO Box 551**
**Blytheville, AR 72315**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.  **$4,925.62.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3239 2/16
ICE Mortgage Technology, Inc.                              Page 1 of 3                              F3200PAN  0416
F3200NOT (CLS)
03/02/2023 02:40 PM PST



## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000 %**   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a)  any default described in Section 6(B) of this Note;

(b)  Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c)  Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d)  the Maturity Date as defined in this Note;

PENNSYLVANIA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3239 2/16
ICE Mortgage Technology, Inc.                                   Page 2 of 3                                              F3200PAN   0416
F3200NOT (CLS)
03/02/2023 02:40 PM PST

(e)  the entry of any judgment against me under this Note; and

(f)   the entry of any judgment under the Security Instrument.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**ALL EN 2GETHER, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY**

_____(Seal)

**BY AMBER BERRY - MEMBER**

**Lender: Logan Finance Corporation**
**NMLS ID:**
**Broker: Go for Gold Consulting LLC**
**NMLS ID:**
**Loan Originator: Alicia Chambers**
**NMLS ID**

*[Sign Original Only]*

**PENNSYLVANIA FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**   **Form 3239 2/16**
ICE Mortgage Technology, Inc.                                     Page 3 of 3
                                                                                          F3200PAN   0416
                                                                                          F3200NOT (CLS)
                                                                                          03/02/2023 02:40 PM PST





# PREPAYMENT ADDENDUM TO NOTE
## (Multi-State)

This Prepayment Addendum to Note ("Addendum") is made this 3rd day of March, 2023 and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") given by the undersigned (the 'Borrower') to evidence Borrower's indebtedness to

Logan Finance Corporation

the "lender'), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at

2472 Germantown Ave., Philadelphia, PA 19133                    ("the property")

**ADDITIONAL COVENANTS**. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender- further covenant and agree, that the provisions of the section of the Note titled Borrower's right to repay

are amended to read as follows:

Subject to the prepayment charge provided below, I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial payment.' When I make a prepayment, I will I tell the Note Holder in writing that I am doing so. I may not designate a payment as prepayment if I have not made all the monthly payments due under the Note.

**If, within the first 60 month(s) beginning with the date I execute the Note (the "Penalty Period"), I make a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, I will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6) month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the. Note at the time the prepayment, unless otherwise prohibited by applicable law or regulation. No repayment charge will be assessed for any prepayment occurring after the Penalty Period.**

The Note Holder will apply all prepayments to reduce the amount of principal that I owe under the Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no change in the due dates of my monthly payments. unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, partial prepayments to reduce the amount of my monthly payment after the first interest rate Change Date following the parti al prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.





The Note Holder's failure to collect a prepayment charge at the time a prepayment is received shall not be deemed a waiver of such charge. Any prepayment charge not collected at the time the prepayment is received shall be payable on demand. and.

All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

**NOTICE TO BORROWER**

**Do not sign this Addendum before you read it. This Addendum provides for the payment of a repayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

ALL EN 2GETHER, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY

_____(Seal)
BY AMBER BERRY - MEMBER



# LOGAN FINANCE CORPORATION

## ALLONGE

Loan Number: ███████████

Borrower(s): Amber Berry

Property Address: 2742 Germantown Ave, Philadelphia, PA 19133

Note/Loan Date: March 3, 2023

Loan Amount: $592,200.00

## PAY TO ORDER OF:

_____

Without Recourse

Logan Finance Corporation

By: _____

Printed Name: Don Pace

Title:  Chief Executive Officer and President

# Exhibit B

Recorded in Philadelphia/PA    Doc Id: 54107770
05/09/2023 09:28 AM    Page 1 of 42    Rec Fee: $244.75
Receipt#: 23-37159
Records Department    Doc Code: M

When recorded, return to:
**Logan Finance Corporation**
**Attn: Una Connors**
**1393 Veterans Memorial Hwy**
**Suite 308 N**
**Hauppauge, NY 11788**
**631-264-1139**

This document was prepared by:
**KIM ROMINE**
**Logan Finance Corporation**
**1393 Veterans Memorial Highway #**
**Suite 308N**
**Haupaugge, NY 11778**
**855-465-6426**

APN #:  871283800

**[Space Above This Line For Recording Data]**

# MORTGAGE

MERS PHONE #: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.    Page 1 of 24    PAEDEDL  0123
PAEDEDL (CLS)
03/02/2023 02:40 PM PST

(A) **"Security Instrument"** means this document, which is dated **March 3, 2023,** together with all Riders to this document.

(B) **"Borrower"** is **All EN 2GETHER, LLC.**

Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 11819 Miami Street, Suite 100, Omaha, NE 68164. The MERS telephone number is (888) 679-MERS.

(D) **"Lender"** is **Logan Finance Corporation.**

Lender is **a Corporation,**                          organized and existing under the laws of **Arkansas.**                                              Lender's address is
**520 Chickasawba St., Blytheville, AR 72315.**

(E) **"Note"** means the promissory note signed by Borrower and dated **March 3, 2023.**                The Note states that Borrower owes Lender **FIVE HUNDRED NINETY TWO THOUSAND TWO HUNDRED AND NO/100** * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$592,200.00**      )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2053.**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**PENNSYLVANIA**–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                  Page 2 of 24                      PAEDEDL   0123
                                                                                                    PAEDEDL (CLS)
                                                                                      03/02/2023 02:40 PM PST



**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☐ Planned Unit Development Rider ☒ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☒ Other(s) [specify]
**SFR Security Instrument Rider, Prepayment Rider**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M)"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.        Page 3 of 24        PAEDEDL  0123
PAEDEDL (CLS)
03/02/2023 02:40 PM PST



governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
**County**                                                    [Type of Recording Jurisdiction]
of **Philadelphia**
    [Name of Recording Jurisdiction]

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 871283800**

which currently has the address of   **2742 Germantown Ave, Philadelphia,**
                                                                                    [Street] [City]
Pennsylvania **19133**                    ("Property Address"):
            [Zip Code]

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 4 of 24                    PAEDEDL  0123
                                                                                                            PAEDEDL (CLS)
                                                                                                    03/02/2023 02:40 PM PST



TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance




with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items



which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.　　　　　　Page 7 of 24　　　　　　PAEDEDL　0123
PAEDEDL (CLS)
03/02/2023 02:40 PM PST

on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 8 of 24                    PAEDEDL  0123
PAEDEDL (CLS)
03/02/2023 02:40 PM PST



**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 9 of 24                    PAEDEDL  0123
                                                                                 PAEDEDL (CLS)
                                                                        03/02/2023 02:40 PM PST



In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.





**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this

Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer



selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.            Page 13 of 24            PAEDEDL   0123
PAEDEDL (CLS)
03/02/2023 02:40 PM PST



**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to



settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to



extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only



report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                Page 17 of 24                PAEDEDL   0123
PAEDEDL (CLS)
03/02/2023 02:40 PM PST



by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc. <span>Page 18 of 24</span> PAEDEDL 0123
PAEDEDL (CLS)
03/02/2023 02:40 PM PST



a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to



be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                          Page 20 of 24                          PAEDEDL   0123
                                                                                              PAEDEDL (CLS)
                                                                                     03/02/2023 02:40 PM PST



shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

    (a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

    (b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

    (c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

    (d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

    (e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

    (f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

    (g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

    (h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

    (i) pay the fees required by Section 14 of this Security Instrument;

    (j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

    (k) pay any collection expenses under Section 22 of this Security Instrument; and

    (l) pay interest at the rate payable from time to time under the Note.



"Survival Event" means any of the following:
   (a) any default described in the Note;
   (b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;
   (c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument:
   (d) the Maturity Date as defined in the Note;
   (e) the entry of any judgment against Borrower under the Note; and
   (f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

ALL EN 2GETHER, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY

_____   3/3/23 (Seal)
BY AMBER BERRY - MEMBER                              DATE

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.              Page 22 of 24                    PAEDEDL  0123
                                                                           PAEDEDL (CLS)
                                                               03/02/2023 02:40 PM PST



State of **PENNSYLVANIA**
County of **PHILADELPHIA**

This record was acknowledged before me on this, the __3__ day of __March__, __2023__, by AMBER BERRY, MEMBER.

Signature of Notarial Officer
(STAMP)

Title of Officer _Notary_

My commission expires _10/07/2023_

Lender: Logan Finance Corporation
NMLS ID: ████████
Broker: Go for Gold Consulting LLC
NMLS ID:
Loan Originator: Alicia Chambers
NMLS ID ████████

Commonwealth of Pennsylvania - Notary Seal
CATHLEEN D'ALONZO - Notary Public
Philadelphia County
My Commission Expires Oct 7, 2023
Commission Number 1293808

54177770/3 Page 24 of 42    05/09/2023 09:28 AM

Certificate of Residence,

I, _____Peg Costelli, Esq_____ , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___3rd___ day of _March, 2023._

_____
                                   Agent of Mortgagee

EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Westerly side of Germantown Avenue at the distance of 137 feet 6-1/8 inches Northward from the North side of Silver Street in the 37th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Germantown Avenue 16 feet 4 inches and extending in length or depth Westward between lines parallel with the said Silver Street 90 feet to a certain 4 feet wide alley leading Northward into Somerset Street and Southward into the said Silver Street.

BOUNDED Northward by ground now or late of Thomas Bailey, Southward by ground now or late of Henry Coleman, Westward by said 4 feet wide alley and Eastward by Germantown Avenue, aforesaid.

TOGETHER with the free and common use, right, liberty and privilege of the said 4 feet wide alley at all times hereafter, forever.

Being also known as 2742 Germantown Avenue.



# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this        3rd       day of March, 2023 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to   Logan Finance Corporation, a Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 2742 Germantown Ave
Philadelphia, PA 19133

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."
**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.
**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3170 1/01
ICE Mortgage Technology, Inc.                    Page 1 of 3                    F3170RLU   0307
                                                                               F3170RLU (CLS)
                                                                   03/02/2023 02:40 PM PST



**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3170 1/01
ICE Mortgage Technology, Inc.    Page 2 of 3    F3170RLU  0307
F3170RLU (CLS)
03/02/2023 02:40 PM PST



Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.  CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.


ALL EN 2GETHER, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY

_____    3/3/23     (Seal)
BY AMBER BERRY - MEMBER                                              DATE


MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3170 1/01
ICE Mortgage Technology, Inc.                          Page 3 of 3                          F3170RLU   0307
                                                                                            F3170RLU (CLS)
                                                                                     03/02/2023 02:40 PM PST



Logan Finance Corporation, a Corporation



# SFR SECURITY INSTRUMENT RIDER

This SFR Security Instrument Rider (this "Security Instrument Rider") is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed by the undersigned (the "Borrower") in favor of **Logan Finance Corporation, a Corporation**

("Lender") dated the same date as the date hereof (the "Security Instrument") relating to the property located at the address set forth on the signature page hereto (the "Property"). This Security Instrument Rider, together with the Security Instrument and the related Note and all other riders, certificates and ancillary documents given by Borrower in connection with the Loan and any related Guaranty, are collectively referred to herein as the "Loan Documents". All capitalized terms used herein but not defined shall have the meanings ascribed to them in the other Loan Documents. In the event of any conflict or inconsistency between this Security Instrument Rider and the Security Instrument or any other Loan Document, the terms of this Security Instrument Rider shall control.

1.  **Representations, Warranties and Covenants.** Borrower represents, warrants and covenants to Lender as follows:

(a) **Compliance with Laws, Etc.** The Property and the ownership, leasing, management, maintenance and operation of the Property are in compliance, in all material respects, with Applicable Law, including without limitation laws pertaining to zoning, construction of improvements on the Property, fair housing, and requirements for equal opportunity, anti-discrimination. Borrower shall cause the Property and the ownership, leasing, management, maintenance and operation of the Property to comply, in all material respects, with Applicable Laws. The Property has not been purchased with proceeds of any illegal activity. There has not been committed by Borrower or by any other person or entity in occupancy of or involved with the operation, use or leasing of the Property any act or omission affording any governmental authority the right of forfeiture as against the Property or any part thereof. To Borrower's knowledge, there is no evidence of any illegal activities on the Property and Borrower shall take

SFR Security Instrument Rider Rev. 02/04/2016
211786612v.5
ICE Mortgage Technology, Inc.                    Page 1 of 12

I1132SIRL   0317
I1132RIDER (CLS)
03/02/2023 02:40 PM PST

reasonable measures to prevent any illegal activities from occurring at the Property. Borrower is not in default or violation of and shall comply with any order, writ, injunction, decree or demand of any court or other governmental authority applicable to Borrower or the Property

(b) **Licenses and Permits.** Borrower maintains in full force and effect all certifications, permits, licenses, consents, authorizations and approvals required for the legal leasing, use, occupancy and operation of the Property as a residential rental property (collectively, "<u>Permits</u>"). Borrower has not failed to comply, in any material respect, with any term or condition of any such Permit. Borrower shall keep in full force and effect and shall comply all such Permits in all material respects.

(c) **Condition of the Property.** The Property is in a good, safe and habitable condition and repair, and free of and clear of any material damage or waste, and Borrower shall keep and maintain the Property in such condition. Borrower shall not make (or permit any tenant to make) any structural alterations to the Property (including, without limitation, any alterations to the roof of the Property) that would reasonably be expected to have a material adverse effect on the use, leasing, operation, value or marketability of the Property (a "<u>Material Adverse Effect</u>"). Borrower shall not abandon the property nor take any action that would reasonably be expected to invalidate any insurance coverage required by the Loan Documents (and Borrower shall promptly correct any such actions of which Borrower becomes aware).

(d) **Operation of the Property.** Borrower at all times has and shall continuously (i) engage in the businesses of ownership, leasing, maintenance, management and operation of the Property, (ii) operate the Property as a residential rental property, and (iii) own or lease all equipment, fixtures and personal property that are necessary to operate the Property. Borrower agrees that (A) the purpose of the Loan is for business and/or commercial purposes only, (B) the Loan is not for personal, family or household use, (C) the Property is not used nor will be used as a residence or second home of (1) Borrower, (2) any affiliate of Borrower, (3) any holder of a direct or indirect equity interest in Borrower or any such affiliate, (4) any officer, director, executive employee or manager of any person or entity described in the foregoing clauses (1) – (3) or (5) any family member (including spouse, siblings, ancestors and lineal descendants) of any person or entity described in the foregoing clauses (1) – (4) (the persons and entities referred to in the foregoing clauses (1) – (5) are collectively referred to herein as "<u>Prohibited Persons</u>") and (D) the Property is an investment to be held for future appreciation and will be a rental property. Borrower shall not (I) convert any individual dwelling units or common areas to commercial use, or convert any common area or commercial use to individual dwelling units, (II) initiate or acquiesce in a change in the



zoning classification of the Property, (III) establish any condominium or cooperative regime with respect to the Property or (IV) subdivide the Property, in each case unless Lender has agreed thereto in writing. Section 6 of the Security Instrument is hereby deleted in its entirety.

(e) **Compliance with Agreements and Property Documents.** The Property is not subject to, and Borrower shall not agree or consent to, any agreement, instrument or restriction which would reasonably be expected to have a Material Adverse Effect. Borrower is not in default, in any material respect, in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any agreement or instrument relating to the Property and binding on Borrower or the Property, including without limitation any reciprocal easement agreement, declaration of covenants, conditions and restrictions and any condominium or home owner's association governing documents, rules and regulations (collectively, "Property Documents"). Borrower shall continue to observe and perform, in all material respects, each and every term to be observed or performed by Borrower pursuant to the terms of each Property Document. Borrower shall enforce in a commercially reasonable manner the performance and observance of each Property Document, shall do all things reasonably necessary to preserve and to keep unimpaired its material rights thereunder and cause the Property to be operated in accordance therewith in all material respects

(f) **Leases.** The Property or, if the Property consists or more than one rental unit, each such rental unit, is subject to a written lease that (i) has a rental rate and terms consistent with existing local market rates and terms, (ii) as of the date the lease was executed, had a term of at least twelve months and not more than three years except where such lease is pursuant to Section 8 of the Housing Act of 1937 (42 U.S.C. § 1437f) ("Section 8", in which case the lease must conform to the requirements of Section 8), (iii) as of the date hereof, has a remaining term of not less than three months, (iv) complies with all Applicable Law in all material respects and includes all disclosures required by applicable law and (v) covers 100% of the square footage of the applicable Property, or a unit therein, as applicable (an "Eligible Lease"). Borrower has delivered to Lender copies of each lease for the Property, each such lease is in full force and effect and not in default in any material respect and there are no oral agreements relating to any such lease. Borrower is the lessor under each Eligible Lease. Borrower shall not enter into any lease (including any renewal or extension of any existing lease) for the Property or a rental unit therein that is not an Eligible Lease.

(g) **Tenants.** Each Eligible Lease for the Property, or a unit therein, is with a bona fide third-party lessee who satisfies each of the following criteria (an "Eligible Tenant"): (i) Borrower has verified, based on bona fide written documentation, that the tenant has

SFR Security Instrument Rider Rev. 02/04/2016
211786612v.5
ICE Mortgage Technology, Inc.

I1132SIRL  0317
I1132RIDER (CLS)
03/02/2023 02:40 PM PST





sufficient financial resources to satisfy its obligations under such lease, (ii) the tenant is not subject to an ongoing bankruptcy or other insolvency proceeding as such date of initial screening of the tenant prior to its execution of the lease (or if not so initially screened, as of the date hereof) and (iii) the tenant is not a Prohibited Person. No person or entity (other than Borrower) has any possessory interest in the Property or any unit therein or right to occupy the same except for Eligible Tenants under and pursuant to Eligible Leases. Borrower shall not enter into any lease (including any renewal or extension of any existing lease) for the Property or a rental unit therein with any person or entity that is not an Eligible Tenant.

(h) **Security Deposits.** Borrower maintains and shall continue to maintain security deposits for the Property in accordance with Applicable Law in all material respects. Upon Lender's written request during a default or upon any foreclosure of the Property or transfer in lieu thereof, Borrower shall deliver (or cause to be delivered) all security deposits to Lender for safe-keeping, and not for application against the Loan; provided, that to the extent any security deposits are forfeited by the applicable tenant pursuant to the terms of the applicable lease, Lender may apply such amounts against Borrower's obligations under the Loan Documents.

(i) **Property Taxes, Insurance, Etc.** Borrower is not delinquent and shall remain, at all times, current in the payment of any taxes, assessments, charges, fines, impositions, Community Association Dues, Fees, and Assessments or insurance premiums attributable to the Property.

(j) **Utilities and Public Access.** The Property has, and Borrower shall take all steps necessary to ensure that the Property continues to have rights of access to public ways and is served by electricity, water, sewer or septic system and storm drain facilities adequate to service the Property for its intended uses. All public utilities necessary or convenient to the full use and enjoyment of the Property are located either in the public right-of-way abutting the Property (which are connected so as to serve the Property without passing over other property) or in recorded easements serving the Property, and all roads necessary for the use of the Property for its intended purposes have been completed and dedicated to public use and accepted by the applicable governmental authorities.

(k) **Ground Lease.** Borrower owns fee simple title to the Property and the Property is not subject to any ground lease.

(l) **Litigation.** Except as disclosed in writing to Lender, there are no orders, injunctions, decrees, judgments, actions, suits or proceedings (including proceedings regarding fair housing, anti-discrimination, or equal opportunity) at law or in equity by or before any court or other governmental authority pending or, to Borrower's knowledge, threatened, against or affecting Borrower, any guarantor of the Loan (a "Guarantor") or

the Property. All information with respect to the same that has been provided to Lender by Borrower is true and complete

(m) **Bankruptcy.** Neither Borrower nor any Guarantor is (i) the subject of or a party to any pending bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation; (ii) preparing or intending to be the subject of any such proceeding or dissolution or liquidation; (iii) the subject of any judgment unsatisfied of record or docketed in any court; or (iv) insolvent.

(n) **Further Assurances.** Promptly following request by Lender, Borrower shall, at its sole cost and expense: (i) execute and deliver, or cause to be executed and delivered, such documents, instruments, certificates, assignments and other writings, and do such other acts as Lender may request, to correct any defects or omissions in the Loan Documents, and to grant, evidence, preserve, perfect and protect the Property and Lender's liens thereupon and the priority thereof, and (ii) do and execute all and such further lawful and reasonable acts, conveyances and assurances for the better and more effective carrying out of the intents and purposes of the Loan Documents, as Lender may reasonably require from time to time.

(o) **Charges; Liens.** Borrower shall promptly discharge any lien that attaches to the Property (other than a lien for property taxes not yet due and payable) unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement or (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded. If Lender determines that any part of the Property is subject to a lien (other than a lien for property taxes not yet due and payable), Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 1(s). The second paragraph of Section 4 of the Security Instrument is hereby deleted in its entirety.

(p) **No Joint Assessment.** Borrower shall not suffer, permit or initiate the joint assessment of the Property with (i) any other real property constituting a tax lot separate from the Property, or (ii) any portion of the Property which may be deemed to constitute personal property, or any other procedure whereby the lien of any taxes and assessments payable in respect of the Property or any penalties, interest or fees with respect thereto (collectively, "<u>Taxes</u>") which may be levied against any such real or personal property shall be assessed or levied or charged to the Property.

(q) **Reporting Covenants.** Borrower shall furnish or cause to be furnished to Lender the following reports, notices and other documents:

SFR Security Instrument Rider Rev. 02/04/2016
211786612v.5
ICE Mortgage Technology, Inc.

I1132SIRL 0317
I1132RIDER (CLS)
03/02/2023 02:40 PM PST



(i) **Reporting on Adverse Effects.** Within seven (7) days after Borrower obtains knowledge of the occurrence of any event or circumstance that has or would reasonably be expected to have a Material Adverse Effect, written notice thereof that includes the details of such event or circumstance and the action that Borrower is taking or proposes to take with respect thereto.

(ii) **Default.** Within seven (7) days after Borrower obtains knowledge of any default under the Loan Documents, written notice setting forth the details of such default and the action that Borrower is taking or proposes to take to cure such default.

(iii) **Property Taxes, Community Association Charges and Insurance.** Within seven (7) days of Lender's request therefor, copies of (a) any bills, statements or invoices for taxes, assessments, charges, fines, impositions, Community Association Dues, Fees, and Assessments or insurance premiums attributable to the Property and (b) evidence satisfactory to Lender of payment of any of the foregoing.

(iv) **Other Reports.** As soon as reasonably practicable after request by Lender, furnish or cause to be furnished to Lender in such manner and in such detail as may be reasonably requested by Lender, such evidence of compliance with the Loan Documents and such additional information, documents, records or reports as may be reasonably requested with respect to the Property or the conditions or operations, financial or otherwise, of Borrower and any Guarantor.

2. **Additional Property Subject to the Security Instrument.** In addition to the Property described in the Security Instrument or any rider thereto, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument. building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument and each rider thereto shall together constitute the "Property" for purposes of the Security Instrument, this Security Instrument Rider and each other rider to the Security Instrument.





**3. Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession.**

(a) **Collateral Assignment of Leases.** In addition to the Property described in Section 2 above, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: all leases, lettings, licenses, concessions or other agreements (whether written or oral and whether now or hereafter in effect) pursuant to which any person or entity is granted a possessory interest in, or right to use or occupy all or any portion of the Property, and every modification, amendment or other agreement relating to such leases or other agreements entered into in connection with such leases or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "Bankruptcy Code") (collectively, the "Leases"), together with any extension, renewal or replacement of same, and all right, title and interest of Borrower, its successors and assigns, therein and thereunder, together with all rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases, to perform all other necessary or appropriate acts with respect to such Leases as agent and attorney-in-fact for Borrower, and the right to make all waivers and agreements, to give and receive all notices, consents and releases, to take such action upon the happening of a default under any lease, including the commencement, conduct and consummation of proceedings at law or in equity as shall be permitted under any provision of any Lease or by any law, and to do any and all other things whatsoever which Borrower is or may become entitled to do under any such Leases, and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the rents to the payment and performance of the obligations under the Loan Documents. If Lender gives notice of default to Borrower Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.

(b) **Assignment of Rents.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents"), paid or accruing, of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents, provided, however, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

SFR Security Instrument Rider Rev. 02/04/2016
211786612v.5
ICE Mortgage Technology, Inc.

I1132SIRL  0317
I1132RIDER (CLS)
03/02/2023 02:40 PM PST

(c) **Collection of Rents.** If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received, and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

(d) **Tenant Direction Letters.** In furtherance of Section 3(c), if Lender gives notice of default to Borrower, Lender may, in addition to all other rights and remedies available to Lender, (i) require that Borrower notify and advise each current and future tenant via an instruction letter in a form satisfactory to Lender (a "<u>Tenant Direction Letter</u>") to send all payments of rent (whether by cash, check or other electronic means) directly to Lender and (ii) require Borrower to deliver to Lender all payments of rents (whether by cash, check or other electronic means) received by Borrower, in which event all such rents shall be delivered to such account within four (4) days of receipt thereof. Without the written consent of Lender, Borrower shall not terminate, amend, revoke or modify any Tenant Direction Letter in any manner other than as provided in such Tenant Direction Letter, whether or not a default is continuing. Borrower hereby grants to Lender an irrevocable power of attorney, coupled with an interest, to execute and deliver to tenants such Tenant Direction Letters.

(e) **Lender Expenses.** If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

(f) **No Prior Assignment.** Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this Section 3.



(g) **Possession, Control and Maintenance of the Property.** Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

4. **Additional Provisions Regarding Insurance.**
(a) **Rental Loss Insurance.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5 of the Security Instrument and in such amounts, with such maximum deductibles and for such periods required by Lender. Currently, Lender's rental loss insurance requirements include business income or rental loss insurance, written on an "Actual Loss Sustained Basis" (i) with loss payable to Lender; (ii) covering all risks required to be covered by the insurance provided for in the "all risk" property insurance policy required by Lender and (iii) in an amount equal to one hundred percent (100%) of the aggregate projected gross income less non-continuing expense from the operation of the Property for a period of at least six (6) months after the date of the casualty
(b) **Acknowledgement of Lender's Insurance Requirements.** Borrower acknowledges that Lender's insurance requirements contained in the Security Instrument and herein may change from time to time. All insurance policies and renewals of insurance policies required by the Loan Documents shall be (i) in the form and with the terms required by Lender; (ii) in such amounts, with such maximum deductibles and for such periods required by Lender; and (iii) issued by insurance companies satisfactory to Lender.

5. **Partial Payments.** The following sentence in the second paragraph of Section 1 of the Security Instrument is hereby deleted in its entirety: "If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds." Such sentence shall be replaced with the following: "Lender need not pay interest on any unapplied funds."

6. **Defaults.** The occurrence of any one or more of the following shall constitute a default under the Loan Documents:
(a) any failure by Borrower to pay when due principal or interest on the Loan or any Funds and such default shall continue for a period of three (3) days;

SFR Security Instrument Rider Rev. 02/04/2016
211786612v.5
ICE Mortgage Technology, Inc.

I1132SIRL   0317
I1132RIDER (CLS)
03/02/2023 02:40 PM PST





(b) any failure by Borrower or any Guarantor to pay when due any amount (other than as set forth in the foregoing clause (a)) required to be paid by it under any Loan Document;

(c) if Borrower or any Guarantor fails to perform any of its non-monetary obligations under any Loan Document;

(d) any failure by Borrower to maintain the insurance coverage required by Lender,

(e) if any certification, representation or warranty made by Borrower or any Guarantor in any Loan Document is false, incorrect or misleading in any material respect,

(f) fraud, gross negligence, willful misconduct, material misrepresentation or material omission by or on behalf of Borrower or any Guarantor in connection with the loan application process, any Loan Document or the performance of Borrower's duties or obligations thereunder (material representations include, but are not limited to, representations concerning Borrower operation of the Property as a rental property as required by Section 1(g) above),

(g) if any proceeding for bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation shall commence with respect to Borrower or any Guarantor;

(h) if any Loan Document or any lien granted thereunder shall (except in accordance with its terms or pursuant to Lender's written consent), in whole or in part, terminate, cease to be effective or cease to be the legally valid, binding and enforceable obligation of the parties thereto;

(i) the commencement of a forfeiture action or other similar proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Property or otherwise materially impair the lien created by the Security Instrument or Lender's interest in, or the value or operation of, the Property;

(j) any other default specified in the Loan Documents; or

(k) if Borrower breaches or defaults under any note, instrument or agreement relating to a loan owned by Note Holder, then such breach or default shall be a default under the Loan Documents.

Section 8 of the Security Instrument is hereby deleted in its entirety.

## 7. Remedies.
(a) **Acceleration and Remedies.** Notwithstanding anything to the contrary in the Security Instrument, including any requirement to provide notice to Borrower or any cure period provided for in the Security Instrument (including but not limited to such notice requirements and cure periods set forth in Sections 18, 20 and 22 of



the Security Instrument) or any requirement under Applicable Law for any demand, (which notice and demand Borrower hereby expressly waives), (i) the Loan shall be accelerated and shall become immediately due and payable automatically upon the occurrence of any default described in clause (g) of Section 6 above and (ii) the Loan shall be accelerated and shall become immediately due and payable at the election of Lender at any time upon or after the occurrence of any other default (and also as to any default described in clause (l) of this Section 7(a) to the extent that automatic acceleration is prevented by any lawful stay). Upon and at all times following the occurrence of any default Lender shall have all rights and remedies available to it pursuant to the Loan Documents, and pursuant to Applicable Law, and Lender may take any action, without notice or demand that Lender elects to protect and enforce its rights against Borrower or any Guarantor and in and to the Property and other collateral for the Loan.

(b) **Remedies Cumulative.** Each of the rights, powers and remedies of Lender under the Loan Documents and Applicable Law and at equity shall be cumulative and not exclusive of any other such right, power or remedy. Lender's rights, powers and remedies may be pursued independently, singly, successively, together or otherwise, at such times and from time to time and as often and in such order as Lender may determine, to the fullest extent permitted by Applicable Law, without impairing or otherwise affecting any of the other such rights, powers and remedies of Lender.

(c) **Reinstatement.** Section 19 of the Security Instrument is hereby deleted in its entirety. Notwithstanding any references in the Security Instrument to Section 19 thereof, or to Borrower's right of reinstatement, Borrower hereby waives any and all rights of reinstatement to the fullest extent permitted by Applicable Law. Consistent with the foregoing and notwithstanding anything to the contrary in the Security Instrument, any notice of acceleration need not inform Borrower of the right of reinstatement.

8. **RESPA.** Borrower acknowledges and agrees that the Loan is not a "federally related mortgage loan" and is not subject to RESPA. Notwithstanding the foregoing, Lender will follow RESPA in connection with (i) the administration of escrows under the Loan to the extent provided in the second, third and fourth paragraphs of Section 3 of the Security Instrument and (ii) as provided in Section 20 of the Security Instrument.

9. **REMIC Compliance.** For purposes of determining the fair market value of the Property pursuant to Section 11 of the Security Instrument, no value shall be given to any personal property or nonpermanent fixtures.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument Rider.

Date: **March 3, 2023**
Property Address: **2742 Germantown Ave**
                 **Philadelphia, PA 19133**

**ALL EN 2GETHER, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY**

_____ __3/3/23__ (Seal)
**BY AMBER BERRY - MEMBER**                                    DATE

**Borrower's Notice Address:**
**2901 Edgley St**
**Philadelphia, PA 19121**
**Email: amberberry86@gmail.com**

SFR Security Instrument Rider Rev 02/04/2016
211786612v.5
ICE Mortgage Technology, Inc.               Page 12 of 12               I1132SIRL  0317
                                                                       I1132RIDER (CLS)
                                                                 03/02/2023 02:40 PM PST



# PREPAYMENT RIDER

**THIS PREPAYMENT RIDER** is made this 3rd    day of March, 2023 and is incorporated into and shall be deemed to amend and supplement the Security Instrument of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to

Logan Finance Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

2742 Germantown Ave., Philadelphia, PA 19133

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Subject to the prepayment charge provided below, Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment." When Borrower makes a prepayment, Borrower will tell the Note Holder (as defined in the Note) in writing that Borrower is doing so. Borrower may not designate a payment as a prepayment if Borrower has not made all the monthly payments due under the Note.

If within the first 60    month(s) beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.

The Note Holder will apply all prepayments to reduce the amount of principal that borrower owes under the Note. However, the Note Holder may apply Borrower's prepayment to the accrued and unpaid interest on the prepayment amount, before applying Borrower's prepayment to reduce the principal amount of the Note. If Borrower makes a partial prepayment, there will be no change in the due dates of Borrower's monthly payments unless the Note Holder agrees in writing to those changes.

If the Note is an Adjustable Rate Note, partial prepayments may reduce the amount of Borrower's monthly payment after the first interest rate Change Date (as defined in the Note) following the partial prepayment. However, any reduction due to Borrower's partial prepayment may be offset by an interest rate increase. The Note Holder's failure to collect a prepayment charge at the time a prepayment is received shall not be deemed a waiver of such charge and any such charge calculated in accordance with this section shall be payable on demand.

1

LOGAN101322



All other provisions of the Security Instrument are unchanged by this Rider and remain in full force and effect.

**NOTICE TO BOBROWER**

**DO NOT SIGN THIS PREPAYMENT RIDER BEFORE YOU READ IT. THIS PREPAYMENT RIDER PROVDES FOR THE PAYMENT OF A CHARGE IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

ALL EN2GETHER, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY

_____(Seal)
BY AMBER BERRY - MEMBER

2

LOGAN101322

# Exhibit C

eRecorded in Philadelphia PA   Doc Id: 54503222
12/22/2025 01:32 PM    Page 1 of 3    Rec Fee: $246.75
Receipt#: 25-108240
Records Department    Doc Code: A



RECORD & RETURN TO:
Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
Case No.: 255627-1

Property Address: 2742 Germantown Avenue, Philadelphia, PA 19133
Assessor's Property Tax Parcel/Account Number: **871283800**
Municipality: 37th Ward of the City of Philadelphia

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **Greeene Street Funding Trust II, U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee** (the "Assignor"), whose address is **300 Delaware Avenue, 9th Floor, Wilmington, DE 19801** hereby grants, transfers, and assigns and sets over to **Greene Street Funding Trust II** (the "Assignee"), c/o Delle Donne Corporate Center whose address is **1011 Centre Road, Suite 203 EX-DE-WD2D, Wilmington, DE 19805**, all of the Assignor's rights, title and beneficial interest in and to that certain Mortgage dated March 3, 2023, and given by ALL EN 2GETHER, LLC to (`MERS`) Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Logan Finance Corporation, in the amount of $592,200.00 which Mortgage encumbers the real property known as 2742 Germantown Avenue, Philadelphia, PA 19133 (Assessor`s Property Tax Parcel/Account Number: **871283800)**, and which Mortgage was recorded on May 9, 2023, as Instrument Number 54177770 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania. The real property encumbered by the Security Instrument is described as stated at Exhibit "A" herein.

Firm Case No. 255627-1



IN WITNESS WHEREOF, **Greeene Street Funding Trust II, U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee** has duly executed this instrument on the date set forth below:

Dated: *12/16/2025*

**Greeene Street Funding Trust II, U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee**

By: _____

Name: ___Shlomo Sahadeo_____

Title: ___Authorized Agent_____

STATE OF    ILLINOIS     )
                                  ) ss.
COUNTY OF   COOK        )

On the **16** day of ___December_____ in the year 2025_ before me, the undersigned, a Notary Public in and for said State, personally appeared ___Shlomo Sahadeo_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in ___Cook_____ County.

WITNESS my hand and official seal,

Notary Public: _Jill Lynsey Brodsky_

Notary Expires: _8/16/28_

OFFICIAL SEAL
JILL LYNSEY BRODSKY
Notary Public, State of Illinois
Commission No. 995438
My Commission Expires
August 16, 2028

I hereby certify that the address of the within named Assignee, **Greene Street Funding Trust II**, is c/o Delle Donne Corporate Center whose address is **1011 Centre Road, Suite 203 EX-DE-WD2D, Wilmington, DE 19805**.

Signatory Name: _Jill Lynsey Brodsky_
Signatory Title: _Loan Servicing Associate_

2

Firm Case No. 255627-1



**Exhibit "A"**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Westerly side of Germantown Avenue at the distance of 137 feet 6-1/8 inches Northward from the North side of Silver Street in the 37th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Germantown Avenue 16 feet 4 inches and extending in length or depth Westward between lines parallel with the said Silver Street 90 feet to a certain 4 feet wide alley leading Northward into Somerset Street and Southward into the said Silver Street.

BOUNDED Northward by ground now or late of Thomas Bailey, Southward by ground now or late of Henry Coleman, Westward by said 4 feet wide alley and Eastward by Germantown Avenue, aforesaid.

TOGETHER with the free and common use, right, liberty and privilege of the said 4 feet wide alley at all times hereafter, forever.

Being also known as 2742 Germantown Avenue.

3

# Exhibit D

Schedule A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Westerly side of Germantown Avenue at the distance of 137 feet 6-1/8 inches Northward from the North side of Silver Street in the 37th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Germantown Avenue 16 feet 4 inches and extending in length or depth Westward between lines parallel with the said Silver Street 90 feet to a certain 4 feet wide alley leading Northward into Somerset Street and Southward into the said Silver Street.

BOUNDED Northward by ground now or late of Thomas Bailey, Southward by ground now or late of Henry Coleman, Westward by said 4 feet wide alley and Eastward by Germantown Avenue, aforesaid.

TOGETHER with the free and common use, right, liberty and privilege of the said 4 feet wide alley at all times hereafter, forever.

Being also known as 2742 Germantown Avenue.

*For informational purposes only:*

BEING known as OPA Number 871283800 on the tax map of the City of Philadelphia, Philadelphia County, Commonwealth of Pennsylvania.

# Exhibit E

Green Street Funding Trust II
c/o Renovo Financial
222 W Adams St. # 3150
Chicago, IL 60606
c/o 298 Wissahickon Avenue
North Wales, PA 19454

June 10, 2025

ALL EN 2GETHER LLC
c/o Amber Berry
2742 Germantown Avenue, Philadelphia, PA 19133
2901 Edgley Street, Philadelphia, PA 19121

Sent Via Certified Mail
& Regular Mail

RE:   Mortgage Loan dated March 3, 2023
      Lender: Green Street Funding Trust II
      c/o Renovo Financial

### NOTICE OF INTENT TO FORECLOSE MORTGAGE

The MORTGAGE held by Green Street Funding Trust II (hereinafter we, us or ours) on your property located at 2742 Germantown Avenue, Philadelphia, PA 19133, IS IN SERIOUS DEFAULT *because you have not made the monthly payments for the months of April 2025 to the date of this letter*. Late charges and other charges have also accrued to this date in the amount of $968.25. The total amount now required to cure this default, or in other words, get caught up in your payments, as of the date of this letter, is $17,622.90.

*You may cure this default within THIRTY (30) DAYS of the date of this letter, by paying to us the above amount of $17,622.90, plus any additional monthly payments and late charge which may fall due during this period.* Such payment must be made either by cash, cashier's check, certified check or money order, and made to Renovo Financial, at 222 W. Adams Street, Suite 3150, Chicago , IL 60606.

If you do not cure the default within THIRTY (30) DAYS, *we intend to exercise our right to accelerate the mortgage payments.* This means that whatever is owing on the original amount borrowed will be considered due immediately and you may lose the chance to pay off the original mortgage in monthly installments. If full payment of the amount of default is not made within THIRTY (30) DAYS, *we also intend to instruct our attorneys to start a lawsuit to foreclose your mortgaged property. If the mortgage is foreclosed your mortgaged property will be sold by the Sheriff to pay off the mortgage debt.* If we refer your case to our attorneys, but you cure the default before they begin legal proceedings against you, you will still have to pay the reasonable attorney's fees, actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay the reasonable attorney's fees even if they are over $50.00. Any attorney's fees

will be added to whatever you owe us, which may also include our reasonable costs. *If you cure the default within the thirty-day period, you will not be required to pay attorney's fees.*

We may also sue you personally for the unpaid principal balance and all other sums due under the mortgage. If you have not cured the default within the thirty-day period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's foreclosure sale. You may do so by paying the total amount of the unpaid monthly payments plus any late or other charges then due, as well as the reasonable attorney's fees and costs connected with the foreclosure sale [and perform any other requirements under the mortgage]. It is estimated that the earliest date that such a Sheriff's sale could be held would be approximately March 2026. A notice of the date of the Sheriff sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment will be by calling us at the following number: (312) 878-9610. This payment must be in cash, cashier's check, certified check or money order and made payable to us at the address stated above.

You should realize that a Sheriff's sale will end your ownership of the mortgaged property and your right to remain in it. If you continue to live in the property after the Sheriff's sale, a lawsuit could be started to evict you.

You have additional rights to help protect your interest in the property. YOU HAVE THE RIGHT TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT, OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT. [YOU MAY HAVE THE RIGHT TO SELL OR TRANSFER THE PROPERTY SUBJECT TO THE MORTGAGE TO A BUYER OR TRANSFEREE WHO WILL ASSUME THE MORTGAGE DEBT, PROVIDED THAT ALL THE OUTSTANDING PAYMENTS, CHARGES AND ATTORNEY'S FEES AND COSTS ARE PAID PRIOR TO OR AT THE SALE, [AND THAT THE OTHER REQUIREMENTS UNDER THE MORTGAGE ARE SATISFIED]. CONTACT US TO DETERMINE UNDER WHAT CIRCUMSTANCES THIS RIGHT MIGHT EXIST]. YOU HAVE THE RIGHT TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

*If you cure the default, the mortgage will be restored to the same position as if no default had occurred.* However, you are not entitled to this right to cure your default more than three times in any calendar year.

**PLEASE BE ADVISED THAT WE MAY BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Green Street Funding Trust II
c/o Renovo Financial
222 W Adams St. # 3150
Chicago, IL 60606
c/o 298 Wissahickon Avenue
North Wales, PA 19454

June 10, 2025

Amber Berry
2742 Germantown Avenue, Philadelphia, PA 19133
2901 Edgley Street, Philadelphia, PA 19121

Sent Via Certified Mail
& Regular Mail

RE:   Mortgage Loan dated March 3, 2023
Lender: Green Street Funding Trust II
c/o Renovo Financial

### *NOTICE OF INTENT TO FORECLOSE MORTGAGE*

The MORTGAGE held by Green Street Funding Trust II (hereinafter we, us or ours) on your property located at 2742 Germantown Avenue, Philadelphia, PA 19133, IS IN SERIOUS DEFAULT *because you have not made the monthly payments for the months of April 2025 to the date of this letter*. Late charges and other charges have also accrued to this date in the amount of $968.25. The total amount now required to cure this default, or in other words, get caught up in your payments, as of the date of this letter, is $17,622.90.

*You may cure this default within THIRTY (30) DAYS of the date of this letter, by paying to us the above amount of $17,622.90, plus any additional monthly payments and late charge which may fall due during this period.* Such payment must be made either by cash, cashier's check, certified check or money order, and made to Renovo Financial, at 222 W. Adams Street, Suite 3150, Chicago , IL 60606.

If you do not cure the default within THIRTY (30) DAYS, *we intend to exercise our right to accelerate the mortgage payments.* This means that whatever is owing on the original amount borrowed will be considered due immediately and you may lose the chance to pay off the original mortgage in monthly installments. If full payment of the amount of default is not made within THIRTY (30) DAYS, *we also intend to instruct our attorneys to start a lawsuit to foreclose your mortgaged property. If the mortgage is foreclosed your mortgaged property will be sold by the Sheriff to pay off the mortgage debt.* If we refer your case to our attorneys, but you cure the default before they begin legal proceedings against you, you will still have to pay the reasonable attorney's fees, actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay the reasonable attorney's fees even if they are over $50.00. Any attorney's fees will be added to whatever you owe us, which may also include our reasonable costs. *If you cure the default within the thirty-day period, you will not be required to pay attorney's fees.*

We may also sue you personally for the unpaid principal balance and all other sums due under the mortgage. If you have not cured the default within the thirty-day period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's foreclosure sale. You may do so by paying the total amount of the unpaid monthly payments plus any late or other charges then due, as well as the reasonable attorney's fees and costs connected with the foreclosure sale [and perform any other requirements under the mortgage]. It is estimated that the earliest date that such a Sheriff's sale could be held would be approximately March 2026. A notice of the date of the Sheriff sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment will be by calling us at the following number: (312) 878-9610. This payment must be in cash, cashier's check, certified check or money order and made payable to us at the address stated above.

You should realize that a Sheriff's sale will end your ownership of the mortgaged property and your right to remain in it. If you continue to live in the property after the Sheriff's sale, a lawsuit could be started to evict you.

You have additional rights to help protect your interest in the property. YOU HAVE THE RIGHT TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT, OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT. [YOU MAY HAVE THE RIGHT TO SELL OR TRANSFER THE PROPERTY SUBJECT TO THE MORTGAGE TO A BUYER OR TRANSFEREE WHO WILL ASSUME THE MORTGAGE DEBT, PROVIDED THAT ALL THE OUTSTANDING PAYMENTS, CHARGES AND ATTORNEY'S FEES AND COSTS ARE PAID PRIOR TO OR AT THE SALE, [AND THAT THE OTHER REQUIREMENTS UNDER THE MORTGAGE ARE SATISFIED]. CONTACT US TO DETERMINE UNDER WHAT CIRCUMSTANCES THIS RIGHT MIGHT EXIST]. YOU HAVE THE RIGHT TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

*If you cure the default, the mortgage will be restored to the same position as if no default had occurred.* However, you are not entitled to this right to cure your default more than three times in any calendar year.

**PLEASE BE ADVISED THAT WE MAY BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**UNITED STATES POSTAL SERVICE ®**

## Certificate of Mailing — Firm

| Name and Address of Sender<br><br>HLADIK, ONORATO & FEDERMAN, LLP<br>298 Wissahickon Avenue<br>North Wales, PA 19454 | TOTAL NO.<br>of Pieces Listed by Sender<br><br>4 | TOTAL NO.<br>of Pieces Received at Post Office | Affix Stamp Here<br>*Postmark with Date if Receipt*<br><br>quadient<br>CORRECTION IMI<br>$002.60 ⁰<br>06/10/2025 ZIP 19454<br>043M31250060<br>US POSTAGE |
|---|---|---|---|
| | Postmaster, per (name of Receiving employee) | | |

| USPS TRACKING NUMBER<br>Irismar Hernandez | Address<br>(Name, Street, City, State and Zip Code) | Postage | Fee | Special Handling | Parcel Airlift |
|---|---|---|---|---|---|
| 1 | Amber Berry<br>2901 Edgley Street<br>Philadelphia, PA 19121 | .69 | .65 | | |
| 2. | Amber Berry<br>2742 Germantown Avenue<br>Philadelphia, PA 19133 | .69 | .65 | | |
| 3. | ALL EN 2GETHER LLC<br>C/O Amber Berry<br>2901 Edgley Street<br>Philadelphia, PA 19121 | .69 | .65 | | 1.95 |
| 4. | ALL EN 2GETHER LLC<br>C/O Amber Berry<br>2742 Germantown Avenue<br>Philadelphia, PA 19133 | .69 | .65 | | 2.60 |
| 5. | | .69 | .65 | | 3.25 |
| 6. | | .69 | .65 | | 3.90 |
| 7. | | .69 | .65 | | 4.55 |

PS Form 3665, January 2017 PSN 7530-000-5549

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454

 

9214 8969 0099 9790 1426 8054 36

Amber Berry
2742 Germantown
Philadelphia, PA 19133

(IH)

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454

 

9214 8969 0099 9790 1426 8054 67

ALL EN 2GETHER LLC
C/O Amber Berry
2901 Edgley Street
Philadelphia, PA 19121

(IH)

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454

 

9214 8969 0099 9790 1426 8054 98

ALL EN 2GETHER LLC
C/O Amber Berry
2742 Germantown Avenue
Philadelphia, PA 19133

(IH)

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454

 

9214 8969 0099 9790 1426 8054 29

Amber Berry
2901 Edgley Street
Philadelphia, PA 19121

(IH)

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454



quadient
FIRST-CLASS MAIL
IMI
$000.69 ⁰
06/10/2025 ZIP 19454
043M31250060
US POSTAGE

ALL EN 2GETHER LLC C/O Amber Berry
2742 Germantown Avenue
Philadelphia, PA 19133

(IH)

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454

quadient
FIRST-CLASS MAIL
IMI
$000.69 ⁰
06/10/2025 ZIP 19454
043M31250060
US POSTAGE

ALL EN 2GETHER LLC C/O Amber Berry
2901 Edgley Street
Philadelphia, PA 19121

(IH)

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454



quadient
FIRST-CLASS MAIL
IMI
$000.69 ⁰
06/10/2025 ZIP 19454
043M31250060
US POSTAGE

Amber Berry
2742 Germantown Avenue
Philadelphia, PA 19133

(IH)

Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454



quadient
FIRST-CLASS MAIL
IMI
$000.69 ⁰
06/10/2025 ZIP 19454
043M31250060
US POSTAGE

Amber Berry
2901 Edgley Street
Philadelphia, PA 19121

(IH)

# UNITED STATES POSTAL SERVICE®

## Certificate of Mailing — Firm

Case 2:26-cv-02085   Document 1   Filed 03/30/26   Page 74 of 77

| Name and Address of Sender | TOTAL NO. of Pieces Listed by Sender | TOTAL NO. of Pieces Received at Post Office | Affix Stamp Here *Postmark with Date if Receipt* |
|---|---|---|---|
| HLADIK, ONORATO & FEDERMAN, LLP 298 Wissahickon Avenue North Wales, PA 19454 | 4 | 4 | quadient CORRECTION IMI $002.60 06/10/2025 ZIP 19454 043M31250060 US POSTAGE |
| | Postmaster, per (name of Receiving employee) | | JUN 10 2025 NORTH WALES, PA 19454-99 |

| USPS TRACKING NUMBER Irismar Hernandez | Address (Name, Street, City, State and Zip Code) | Postage | Fee | Special Handling | Parcel Airlift |
|---|---|---|---|---|---|
| 1 | Amber Berry 2901 Edgley Street Philadelphia, PA 19121 | .69 | .65 | | |
| 2. | Amber Berry 2742 Germantown Avenue Philadelphia, PA 19133 | .69 | .65 | | |
| 3. | ALL EN 2GETHER LLC C/O Amber Berry 2901 Edgley Street Philadelphia, PA 19121 | .69 | .65 | | 1.95 |
| 4. | ALL EN 2GETHER LLC C/O Amber Berry 2742 Germantown Avenue Philadelphia, PA 19133 | .69 | .65 | | 2.60 |
| 5. | | .69 | .65 | | 3.25 |
| 6. | | .69 | .65 | | 3.90 |
| 7. | | .69 | .65 | | 4.55 |

PS Form 3665, January 2017 PSN 7530-000-5549



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT** Iris
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

9214 8969 0099 9790 1426 8054 36

| Certified Mail Fee | |
| --- | --- |
| $ **$4.85** | |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)     $
☐ Return Receipt (electronic)   $ **$2.62**
☐ Certified Mail Restricted Delivery  $ **$0.00**
☐ Adult Signature Required      $
☐ Adult Signature Restricted Delivery  $

Postage
$ **$0.690**

Total Postage and Fees
$ **$8.160**

Sent To  **Amber Berry**
Street, Apt. No.,  **2742 Germantown**
or PO Box No.  **Philadelphia, PA 19133**
City, State, Zip+4

PS Form 3800, January 2023    See Reverse for Instructions
6/10/2025 3:50:48 PM



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT** Iris
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

9214 8969 0099 9790 1426 8054 29

| Certified Mail Fee | |
| --- | --- |
| $ **$4.85** | |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)     $
☐ Return Receipt (electronic)   $ **$2.62**
☐ Certified Mail Restricted Delivery  $ **$0.00**
☐ Adult Signature Required      $
☐ Adult Signature Restricted Delivery  $

Postage
$ **$0.690**

Total Postage and Fees
$ **$8.160**

Sent To  **Amber Berry**
Street, Apt. No.,  **2901 Edgley Street**
or PO Box No.  **Philadelphia, PA 19121**
City, State, Zip+4

PS Form 3800, January 2023    See Reverse for Instructions
6/10/2025 3:50:03 PM



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT** Iris
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

9214 8969 0099 9790 1426 8054 98

| Certified Mail Fee | |
| --- | --- |
| $ **$4.85** | |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)     $
☐ Return Receipt (electronic)   $ **$2.62**
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required      $ **$0.00**
☐ Adult Signature Restricted Delivery  $

Postage
$ **$0.690**

Total Postage and Fees
$ **$8.160**

Sent To  **ALL EN 2GETHER LLC**
Street, Apt. No.,  **C/O Amber Berry**
or PO Box No.  **2742 Germantown Avenue**
City, State, Zip+4  **Philadelphia, PA 19133**

PS Form 3800, January 2023    See Reverse for Instructions
6/10/2025 3:53:49 PM



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT** Iris
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

9214 8969 0099 9790 1426 8054 67

| Certified Mail Fee | |
| --- | --- |
| $ **$4.85** | |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)     $
☐ Return Receipt (electronic)   $ **$2.62**
☐ Certified Mail Restricted Delivery  $ **$0.00**
☐ Adult Signature Required      $
☐ Adult Signature Restricted Delivery  $

Postage
$ **$0.690**

Total Postage and Fees
$ **$8.160**

Sent To  **ALL EN 2GETHER LLC**
Street, Apt. No.,  **C/O Amber Berry**
or PO Box No.  **2901 Edgley Street**
City, State, Zip+4  **Philadelphia, PA 19121**

PS Form 3800, January 2023    See Reverse for Instructions
6/10/2025 3:52:23 PM

Jacqueline McNally, Esq. (201332)
Renee Cohen, Esq. (306667)
Timothy A. Cirino, Esq. (326340)
Robert Flacco, Esq. (325024)
Nicole Francese, Esq. (332253)
Perry Russell, Esq. (334517)
Danielle Johnson, Esq. (334703)
Yvonne Ganley, Esq. (337459)
Andrew Kravitz, Esq. (80142)
**FRIEDMAN VARTOLO LLP**
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case No.: 255627-1

IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF
PENNSYLVANIA

-----------------------------------------------------------------x

GREENE STREET FUNDING II,     Plaintiff  NO.:
    v.                                  MORTGAGE FORECLOSURE

ALL EN 2GETHER LLC,

                                    Defendant

-----------------------------------------------------------------x

## CERTIFICATE OF COMPLIANCE

The undersigned attorney for Plaintiff certifies that the Complaint in Mortgage Foreclosure and related documents complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Date: 3/6/2026 _____

                                    Jacqueline F. McNally
                            _____
                            Jacqueline McNally, Esq. (201332)
                            FRIEDMAN VARTOLO LLP
                            Attorneys for Plaintiff
                            1325 Franklin Avenue, Suite 160
                            Garden City, NY 11530
                            (T) (212) 471-5100
                            (F) (212) 471-5150

## VERIFICATION

I, ___Shlomo Sahadeo___ , am authorized representative of RF Mortgage Services Corporation, the servicer for Plaintiff, Greene Street Funding II, of the loan that is subject of this action in mortgage foreclosure. This verification is made on behalf of Plaintiff since servicing of the loan is performed by the servicer, not Plaintiff. The servicer, in the ordinary course of business, maintains the records on the account, the default of which is the basis for the action; and, therefore the servicer has the information and knowledge necessary to verify the allegations of the Complaint. I hereby verify that, based upon the records on the loan that is subject of this Complaint, that the factual statements made in the foregoing Complaint in Mortgage Foreclosure are true and correct to the best of my knowledge, information and belief.

RF Mortgage Services Corporation understands that the law firm Friedman Vartolo LLP is relying upon our representation to proceed with first legal.

I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Date: 3/4/2026

RF Mortgage Services Corporation, as attorney-in-fact for, Greene Street Funding II

By: _____

Name: Shlomo Sahadeo

Title: Authorized Agent

Firm Case Number: 255627-1
Property Address: 2742 Germantown Avenue, Philadelphia, PA 19133